MICHAEL REGAN, ALIAS JACK REGAN, V. STATE OF NEBRASKA.

FILED APRIL 6, 1928. No. 26230.

*Merrow & Murphy*, for plaintiff in error.

*O. S. Spillman, Attorney General*, and *Richard F. Stout*, *contra*.

Heard before GOSS, C. J., ROSE, DEAN, GOOD and HOWELL, JJ.

DEAN, J.

Michael Regan, alias Jack Regan, hereinafter called the defendant, was informed against in Dodge county and there charged with having entered in the daytime the First National Bank of Hooper, and that he "then and there intending by violence and by putting in fear the persons in charge thereof, to steal, take and carry away * * * certain money, goods, chattels, and other property belonging to said bank and depository, did then and there unlawfully, feloniously, forcibly and by violence put in fear one Norman Shaffer, cashier, one William Basler, teller, and one Marvin Fritz, bookkeeper, then * * * in charge of and connected with said bank and depository" as officers and employees thereof. The jury returned a verdict of guilty and the court sentenced the defendant to the penitentiary for a term of 20 years. The defendant's motion for a new trial was denied, and he prosecutes error.

From the state's evidence it appears that the defendant and an unidentified man, on November 12, 1926, entered the bank together shortly after the noon hour. Shaffer was reading a newspaper when the defendant and his companion, unnoticed, entered the bank. On looking up, Shaffer saw the defendant standing in front of the cashier's window with a gun pushed through the bars. With an oath, the defendant said to Shaffer, "Stick 'em up." But Shaffer dropped behind the counter and in a crouching posture entered the customers' room. He testified that the defendant discharged his revolver and the bullet was imbedded in the transom of the door that led from the directors' room to the street. Shaffer then saw Fritz coming out of the clothes closet, and he, Shaffer, ran out of the building and ordered a telephone operator to blow the fire whistle. He immediately returned to the bank,

but the defendant had gone away taking nothing with him. When the defendant appeared at the window, Shaffer saw no masks or covering worn by either the defendant or his companion and never before had seen either of them. At the trial Shaffer testified in respect of the sort of clothing worn by the defendant when he first entered the bank. He said the defendant had a mark or a scar on his cheek, which was plainly visible at the trial, and also a beard of a few days' growth; that his collar was turned up; that he wore a brown hat with the brim partly pulled down, and that defendant's eyes were blue. He also observed that the defendant's companion was the smaller of the two. Shaffer saw the defendant two or three times at the Dodge county jail when he went with witnesses who came to identify him.

Subsequently, learning that the defendant was in jail at Paterson, New Jersey, the witness and Sheriff Johnson of Dodge county, on or about May 9, 1927, went to Paterson, and from among 26 men lined up in the jail, all dressed alike, the witness testified that he identified the defendant as one of the men who attempted the burglary at Hooper. On the way back from Paterson to Dodge county, Shaffer and the sheriff and the defendant rode in the same coach, but no conversation was had with the defendant about the attempted burglary. The defendant, however, pleaded an alibi and protested that he had never been so far west as Dodge county.

The bookkeeper of the bank testified that he saw the defendant two days before the attempted robbery when the defendant obtained small change for a 10-dollar bill. He recognized him on November 12 as the same man when the defendant grabbed him and ordered him to put his hands up. This witness did not see the defendant again until he was brought back from New Jersey, when he recognized him. The teller of the bank likewise identified the defendant as the man who made the attempted burglary. The defendant was also identified by Lorena and Clara Herman, two school girls, who lived about a block from

the bank, as being the man whom they saw coming from the bank on November 12 and enter a car that was parked in front of their home. These girls testified that another man was with the defendant and that one of them had a gun in his hand. Two other school girls also recognized the defendant as the man who picked them up and took them to school in his car shortly before the bank was robbed. John Lehman, the sheriff at Columbus, was notified by state sheriff Condit of the attempted robbery. He saw the car in which the defendants rode and ordered its occupants to stop, but they refused and he shot after them, but the car got away. In fact, the record conclusively shows that the defendant was identified by more than ten people who testified that they had seen him in the vicinity of the bank at the time in question here.

The defendant testified that he could establish the fact, and produced affidavits in support of his contention, that he was in New Jersey at the time of the burglary, and he made a·showing for a continuance, by affidavits, in order that he might obtain the depositions of his alleged alibi witnesses. But the court overruled the defendant's application and, in view of all the evidence before us, we do not think the court erred in its ruling.

The defendant complains that the penalty imposed is too severe and asks that we reduce the sentence. In view of the facts, we do not think the sentence should be reduced. When a man enters a bank or any other building, and brandishes a loaded revolver, or other deadly weapon, with a view to obtaining money, or other thing of value, by force or by putting in, fear the person or persons in charge of such bank or building, a sentence of 20 years in the penitentiary is none too severe. The act of the defendant was the act of a malignant desperado who was bent on accomplishing his evil purpose at any cost, even to the taking of human life.

The defendant also assigns as prejudicial error the giving of every instruction which was submitted by the court. But the instructions are not discussed nor are the alleged

errors pointed out. It follows that this assignment of alleged error cannot be considered by us. Other assignments of alleged error are urged which we do not find it necessary to discuss and do not decide. Finding no reversible error, the judgment of the district court is

AFFIRMED.

HOWELL, J., concurring.

In addition to the reasons stated in the foregoing opinion, when the motion for continuance was presented and supported by affidavits, the county attorney agreed "if the witnesses named in said affidavits were present in court they would testify to the facts set forth in said affidavits."

In an order denying a continuance it is recited: "Thereupon the county attorney stated in open court that he would stipulate that if the witnesses named in said affidavits were present in court at the time of trial they would testify to the facts set forth in said affidavits." The affidavits related to witnesses whose only evidence would be to support an alibi. A situation might arise when a defendant would be prejudiced by being denied the privilege of having the jury hear and see the witnesses testify. This is not such a case. Most, if not all, of the testimony would have been in the form of depositions had the case been continued.